UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

Eastern District of Kentucky
**F I L E D**

JAN 1 7 2007

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-89-GWU

LINDA G. VAUGHN,                                                                                    PLAINTIFF,

VS.                                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                                         DEFENDANT.

## INTRODUCTION

The plaintiff had previously filed <u>Vaughn v. Barnhart</u>, London Civil Action No.

04-09 (E.D. Ky.) to appeal from the negative administrative decision on her

application for Supplemental Security Income (SSI).[1]  After the undersigned's

Memorandum Opinion, Order and Judgment of January 5, 2005 (Tr. 419-429), the

case was returned to the agency for further consideration.   Another negative

administrative decision issued (Tr. 362-374) and the case is again before the

undersigned, on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  <u>Jones v.</u>

---

[1]Contrary to the current Administrative Law Judge's characterization of the claim's
history (Tr. 362), a <u>2001</u> remand of the proceedings was the result of a remand by the
agency's own Appeals Council (Tr. 19, 325-327).

Vaughn

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the

2

Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . .

3

Vaughn

manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Ibid</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The appeal had been remanded in 2005 by the undersigned since the jobs relied upon by the ALJ had been elicited in response to a hypothetical question which did not take into account certain handling, grasping and postural restrictions voiced in the medical opinions of record. (Tr. 426-427). The undersigned also noted that while the hearing judge could have relied on the more remote opinion of Dr.

4

Vaughn

Donovan, the ALJ did not appear to do so, or even acknowledge that the doctor had issued any residual functional capacity statements. (Tr. 427 n.3).

In the current administrative decision now under review, the ALJ has found that the plaintiff, who had no past relevant work, was able to engage in a significant number of medium level jobs identified by the latest vocational expert (VE). (Tr. 373). The hearing judge acknowledged Dr. Donovan's medical source statement in Exhibit 5F as indicating that the plaintiff could perform medium level work physically, and also stated that she relied upon Consultative Examiner Burns' assessment of medium level work as worthy of "great weight." (Tr. 369). The ALJ indicated that she was basing her determination of the plaintiff's mental restrictions on the opinions of Dr. Gary Maryman and Dr. Linden/Mr. Leisenring. (Tr. 370).

At the 2005 administrative hearing, several hypothetical questions had been given to the VE. In the first hypothetical question, the VE was asked to assume that the plaintiff: (1) was restricted to no more than the medium level of exertion, (2) had some difficulty reading, (3) had a "limited but satisfactory" ability to relate to coworkers, use judgment, interact with supervisors, function independently, maintain attention and concentration, handle detailed instructions, relate predictably in social situations, demonstrate reliability, maintain a regular schedule, work close to others without undue distraction, accept instructions and criticism appropriately, and respond to changes in a work setting, and (4) had a "seriously limited but not

5

Vaughn

precluded" ability to deal with the public, deal with work stresses, handle complex instructions, and behave in an emotionally stable manner. (Tr. 405-406). The jobs elicited were the ones ultimately relied upon by the ALJ. (Compare Tr. 407 to Tr. 372).

Alternative jobs noted by the ALJ in his opinion, but not technically relied upon, were in response to a second hypothetical question. (Tr. 372). This hypothetical incorporated the same education and psychological restriction comments as in the first hypothetical, but then indicated that the individual was restricted to the light level, but would require a sit-stand option every thirty minutes. (Tr. 407).

The plaintiff first argues that the agency did not comply with the remand order of this Court, since no additional consultative examination had been specifically mentioned in the Memorandum Opinion discussion of the future proceedings on remand. The undersigned finds that the actual ordering of the new consultative physical examination by Dr. Mark Burns was harmless error, in that there is nothing in the record to suggest that the agency prevented Vaughn from herself introducing new evidence about her condition on remand as well. Given the two years that had elapsed since the last consultative examination, it was perhaps prudent for the agency to have taken the step of ordering an additional examination. Additionally and most significantly, at the November, 2005 hearing, the plaintiff's counsel did not

6

Vaughn

object to the medical exhibits then of record, despite being afforded an opportunity to do so. (Tr. 394).

As noted in the prior discussion, this Court had previously stated that the agency originally *could have* relied on the more remote opinion of Dr. Patrick Donovan from 1999, but had simply not mentioned it in the previous agency decision. (Tr. 427). Donovan, a consultative examiner, had stated in the text of his report that the plaintiff had no difficulty with sitting or standing, and had a normal station and gait. (Tr. 215-216) and, in an accompanying assessment form, had marked no restriction regarding standing, walking and sitting (Tr. 217); in the text of his report, the doctor did indicate that because of her right arm problems, her lifting, carrying and handling was "limited" to an unspecified degree (Tr. 215) and, on the accompanying form, mentioned occasional lifting up to 50 pounds, a <u>frequent</u> ability to do all postural activities, and <u>no</u> other restrictions[2] (Tr. 217).  In the current agency decision, Donovan's opinion was specifically mentioned and partially relied upon by the present ALJ. (Tr.369). The ALJ's action does appear to be consistent with the language of this Court's prior Memorandum Opinion.

---

[2]This included <u>no</u> restrictions on repetitive fine manipulation, pushing/pulling, simple grasping, and being around moving machinery. (Tr. 217).   Thus, this more specific assessment casts doubt on whether  handling would be restricted, other than that the plaintiff could not deal with heavy objects, which would be a reasonable interpretation of Dr. Donovan's position.

7

Vaughn

The restrictions considered in the main hypothetical question were also undeniably consistent with the restrictions cited by Consultative Examiner Burns, who opined that the plaintiff was capable of a full range of medium level work. (Tr. 453). Thus, two consultative examiners provided assessments upon which the ALJ could rely and the fact that other equally-weighted consultative examiners (i.e., Aissa Alexeeva, Edward Escobar or Hughes Helm) may have cited additional restrictions is irrelevant. Substantial evidence supports the current ALJ's use of hypothetical physical factors.

The plaintiff also challenges depiction of her educational status used in the hypothetical questions. However, as the defendant points out in her brief, the plaintiff's attorney specifically asked the VE if functional illiteracy would impact the jobs he had cited, and received a negative response. (Tr. 411).

Finally, Vaughn challenges the mental restrictions cited to the VE. However, the ALJ followed the specific restrictions cited by James Leisenring in his assessment form accompanying his report. (Tr. 446-447). The textual statement in the report which is quoted by the plaintiff, to the extent it may appear to be in any way inconsistent with the form assessment done the same date, takes into account impermissible factors outside the expertise of the examiner—such as the vocational impact of functional illiteracy and "lack of employment history", and also factors such as "presumed motivational deficits", which apparently was independent of

8

Vaughn

whatever psychological problems were experienced by the plaintiff. The restrictions on the form, judged by the written comments included to describe clinical supportive findings, appeared to take into account only restrictions associated with the plaintiff's borderline IQ, anxiety and depression. (Tr. 446-447). This was sufficient evidence to support the ALJ's decision.

The decision will be affirmed.

This the ___/7___ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE

9